UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OLAREWAJU JAMES OLADIPO,<br><br>Defendant | Criminal No.  22cr10062<br><br>Violations:<br><br>Counts One through Eleven: Health Care Fraud (18 U.S.C. § 1347)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(7)) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

1. Olarewaju James OLADIPO, M.D. was an orthopedic surgeon practicing at Boneguard Orthopedics, P.C. ("Boneguard"), located at 999 North Main Street, Randolph, Massachusetts. OLADIPO has been licensed to practice medicine in Massachusetts since 1996.

### Health Care Programs

2. The Medicare program was a federally subsidized health insurance program for the elderly and for persons with certain disabilities pursuant to Title XVIII of the Social Security Act. The program was administered by the Health Care Financing Administration of the United States Department of Health and Human Services, which, on July 1, 2001, became the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services (collectively referred to in this Indictment as "CMS").

1

3. The Medicare program was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it was a public plan affecting commerce, under which medical benefits, items, and services were provided to individuals, and included individuals and entities who were providing medical benefits, items, and services for which payment could be made under the plan. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

4. Medicaid was a federal and state-funded health insurance program for children, disabled individuals, and families and individuals who fall below certain income levels. Massachusetts's Medicaid Program is commonly known as "MassHealth."

5. MassHealth was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it was a public plan affecting commerce, under which medical benefits, items, and services were provided to individuals, and included individuals and entities who were providing medical benefits, items, and services for which payment could be made under the plan. Individuals who received MassHealth benefits are referred to as MassHealth "members."

6. Health Plans 1-5 were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that each was a health plan affecting commerce, under which medical benefits, items, and services were provided to individuals, and included individuals and entities who were providing medical benefits, items, and services for which payment could be made under the plan.

## CPT Codes

7.  The American Medical Association published a manual entitled Current Procedural Terminology Codes (the "CPT Code"), which contained universally recognized billing codes used by and relied upon by health care providers and health care benefit programs, including those referenced above. This manual contained a list of CPT codes and a description of the corresponding services.

8.  When submitting bills to health care benefit programs, health care providers or persons billing on their behalf had to identify the proper CPT codes that corresponded to the services they provided.

9.  With respect to office visits of a new patient, a health care provider could submit a bill using "evaluation and management" ("E/M") CPT codes 99201, 99202, 99203, 99204, or 99205, with each code progressively requiring a more extensive examination, higher complexity counseling and decision-making, and a longer face-to-face interaction. The CPT Code described codes 99201 through 99205 as follows:

   a.  99201: Office or other outpatient visit for the evaluation and management of a new patient, which requires the provider to meet all of the following components: (1) a problem-focused history; (2) a problem focused examination; (3) straightforward medical decision-making. Usually, the presenting problem(s) are minor. Typically, 10 minutes are spent performing these services.

   b.  99202: Office or other outpatient visit for the evaluation and management of a new patient, which requires the provider to meet all of the following components: (1) an expanded problem-focused history; (2) an expanded problem focused examination; (3) straightforward medical decision-making. Usually, the presenting problem(s) are of low to moderate severity. Typically, 20 minutes are spent performing these services.

3

    c.    99203: Office or other outpatient visit for the evaluation and management of a new patient, which requires the provider to meet all of the following components: (1) a detailed history; (2) a detailed examination; (3) medical decision-making of low complexity. Usually, the presenting problem(s) are of moderate severity. Typically, 30 minutes are spent performing these services.

    d.    99204: Office or other outpatient visit for the evaluation and management of a new patient, which requires the provider to meet all of the following components: (1) a comprehensive history; (2) a comprehensive examination; (3) medical decision-making of moderate complexity. Usually, the presenting problem(s) are of moderate to high severity. Typically, 45 minutes are spent performing these services.

    e.    99205: Office or other outpatient visit for the evaluation and management of a new patient, which requires the provider to meet all of the following components: (1) a comprehensive history; (2) a comprehensive examination; (3) medical decision-making of high complexity. Usually, the presenting problem(s) are of high severity. Typically, 60 minutes are spent performing these services.

10. With respect to office visits of a returning, or "established" patient, a health care provider could submit a bill using E/M CPT codes 99211, 99212, 99213, 99214, or 99215, with each code progressively requiring a more extensive examination, higher complexity counseling and decision-making, and a longer face-to-face interaction. The CPT Code described codes 99211 through 99215 as follows:

    a.    99211: Office or other outpatient visit for the evaluation and management of an established patient. Usually, the presenting problem(s) are minimal. Typically, 5 minutes are spent performing or supervising these services.

    b.    99212: Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 components: (1) a problem-focused history; (2) a problem-focused examination; (3) straightforward medical decision-making. Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually,

the presenting problem(s) are self-limited or minor. Physicians typically spend 10 minutes face-to-face with the patient and/or family.

c.  99213: Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components: (1) an expanded problem-focused history; (2) an expanded problem-focused examination; (3) medical decision-making of low complexity. Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of low to moderate severity. Physicians typically spend 15 minutes face-to-face with the patient and/or family.

d.  99214: Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components: (1) a detailed history; (2) a detailed examination; (3) medical decision-making of moderate complexity. Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of moderate to high severity. Physicians typically spend 25 minutes face-to-face with the patient and/or family.

e.  99215: Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components: (1) a comprehensive history; (2) a comprehensive examination; (3) medical decision-making of high complexity. Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of high severity. Physicians typically spend 40 minutes face-to-face with the patient and/or family.

### Scheme to Defraud

11.  From in or about January 2016 through in or about December 2019, OLADIPO devised and executed a scheme to defraud health care benefit programs by falsely billing for patient visits. The purpose of the scheme was for OLADIPO to unlawfully enrich himself by submitting false and fraudulent claims to insurers for payment for medical services that he did not provide.

5

12. To carry out the scheme, OLADIPO claimed that patient visits were more complex and longer than they in fact were. OLADIPO did so by using CPT codes for more complex—and thus more expensive—services that were not provided (a practice that is referred to as "upcoding"). In connection with the scheme, OLADIPO falsified medical records of patient visits to reflect examinations and services that were not performed.

13. OLADIPO ensured a high flow of patients to his practice by prescribing powerful, highly addictive opioids at a rate that made him one of the top prescribers of such drugs in Massachusetts. For example, in 2017, OLADIPO was the highest prescriber of opioid pain relievers for MassHealth fee-for-service members.[1] In 2018, he was the second-highest prescriber in that category.

14. Beginning in or about 2015, OLADIPO generally ceased performing surgery and instead offered non-surgical interventions, which primarily consisted of E/M services, to chronic pain patients. OLADIPO's patient volume increased dramatically. Scheduling records show that in 2017 and 2018, OLADIPO regularly saw—and billed for—more than 60 patients per day, sometimes more than 90 patients per day, and at least in one instance, more than 100 patients per day. In fact, many of OLADIPO's patient visits lasted only five minutes or less, despite the fact that OLADIPO billed for E/M services that were supposed to last 15, 25, 30, or 45 minutes.

---

[1] MassHealth members fall into two categories. MassHealth pays medical providers directly for care delivered to "fee-for-service" ("FFS") members. The remaining members are enrolled in managed care entities ("MCEs"), which pay for these members' services. MassHealth then pays the MCEs capitated payments based upon the MCEs' volume of enrollees in a given year.

6

15. Many of these brief encounters were so superficial in nature that they did not include any physical examination or medical history of the patient, key elements needed to bill E/M CPT codes.

16. Despite only being seen for a nominal amount of time, and thus not receiving the claimed treatment from OLADIPO, patients nevertheless returned to OLADIPO's office and continued to receive prescriptions for opioid pain relievers.

17. During 2018 alone, OLADIPO issued prescriptions for oxycodone, a schedule II opioid controlled substance, to over 600 patients.

18. OLADIPO maintained a policy requiring patients to see him in a face-to-face encounter to receive a prescription for a controlled substance. Because federal law prohibits the refill of Schedule II controlled substances, *see* 21 U.S.C. § 829(a), OLADIPO's policy provided him with repeated opportunities to see patients face-to-face without delivering meaningful treatment and to fraudulently bill for those office visits.

19. The vast majority of OLADIPO's patients received opioid prescriptions. An analysis of OLADIPO's scheduling records show that most patients who checked into the practice

and for whom a service was billed on some of OLADIPO's busiest days received prescriptions for controlled substances:

| | 2016 | | | | 2017 | | | | 2018 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Checked In and Billed | Opioid Rx | % | | Checked In and Billed | Opioid Rx | % | | Checked In and Billed | Opioid Rx | % |
| 10/13/2016 | 94 | 67 | 71.3% | 5/23/2017 | 96 | 84 | 87.5% | 1/3/2018 | 110 | 95 | 86.3% |
| 8/30/2016 | 85 | 67 | 78.8% | 5/30/2017 | 93 | 78 | 83.9% | 3/20/2018 | 99 | 74 | 74.8% |
| 9/1/2016 | 83 | 52 | 62.7% | 3/28/2017 | 85 | 65 | 76.5% | 10/4/2018 | 88 | 69 | 78.4% |
| 9/22/2016 | 83 | 65 | 78.3% | 10/5/2017 | 85 | 65 | 76.5% | 3/1/2018 | 83 | 59 | 71.1% |
| 9/21/2016 | 82 | 60 | 73.1% | 5/25/2017 | 84 | 71 | 84.5% | 3/27/2018 | 83 | 58 | 69.9% |

Overall, from 2016 to 2019, over 70 percent of OLADIPO's patient visits resulted in the issuance of an opioid prescription.

20.     OLADIPO's practice of writing opioid prescriptions during over 70 percent of his patient visits and policy of requiring face-to-face visits for each opioid prescription enabled his scheme to defraud health benefit programs by submitting false claims for treatment he did not provide.

## Patient 1

21.     OLADIPO billed Health Plan 2 for services delivered to Patient 1 from approximately 2014 to 2019. Patient 1's treatment consisted entirely of OLADIPO's delivery of prescriptions for oxycodone and, at times, injections of cortisone.

22.     OLADIPO frequently wrote his prescriptions for oxycodone for Patient 1 in advance of Patient 1's arrival at his office.

23.     Patient 1's visits with OLADIPO lasted fewer than five minutes.

8

24. OLADIPO did not physically examine Patient 1. Nevertheless, OLADIPO's treatment notes included clinical findings pertaining to Patient 1's cervical spine, left shoulder, left wrist, and left hip that OLADIPO only could have made had he physically examined Patient 1. OLADIPO's treatment notes were therefore falsified.

25. OLADIPO billed Health Plan 2 for Patient 1's visits using either CPT code 99213 or CPT code 99214. These claims were false because OLADIPO did not provide the treatment required to bill using these codes.

### Patient 2

26. OLADIPO billed Health Plan 3 for services delivered to Patient 2 from approximately 2015 to 2020. Patient 2 had a history of opioid addiction and was receiving medication-assisted treatment from an addiction specialist.

27. OLADIPO was aware of Patient 2's history of addiction. Nevertheless, he prescribed to Patient 2 both oxycodone and lorazepam, a schedule IV benzodiazepine sedative.

28. Patient 2's visits to OLADIPO's office typically included only five minutes of face-to-face time with OLADIPO and did not include a physical examination. Nevertheless, OLADIPO's treatment notes included clinical findings pertaining to the range of motion, strength, tenderness, and impingement of Patient 2's shoulder cervical spine. OLADIPO only could have made these findings had he physically examined Patient 2. OLADIPO's treatment notes were therefore falsified.

29. OLADIPO billed Health Plan 3 for Patient 2's visits using either CPT code 99213 or CPT code 99214. These claims were false because OLADIPO did not provide the treatment required to bill using these codes.

### Patient 3

30. OLADIPO billed Health Plan 4 for services delivered to Patient 3 from approximately 2012 to 2019.

31. OLADIPO prescribed oxycodone to Patient 3 from 2012 to 2014. By 2015, Patient 3 stopped taking the oxycodone and sought medication-assisted treatment for opioid addiction. Patient 3 informed OLADIPO of these facts. In 2016, however, OLADIPO prescribed oxycodone to Patient 3 two more times in 2016 and once more in 2018. Each time OLADIPO prescribed oxycodone to Patient 3, he billed Health Plan 4 for the associated office visit.

32. Patient 3's visits to OLADIPO's office included fewer than five minutes of face-to-face time with OLADIPO and did not include a physical examination. Nevertheless, OLADIPO's treatment notes included clinical findings pertaining to the range of motion, strength, and tenderness of Patient 3's lumbar spine and thumb. OLADIPO only could have made these findings had he physically examined Patient 3. OLADIPO's treatment notes were therefore falsified.

33. OLADIPO billed Health Plan 4 Patient 3's visits using either CPT code 99213 or CPT code 99214. These claims were false because OLADIPO did not provide the treatment required to bill using these codes.

### Patient 4

34. Patient 4 suffered a work-related accident in 2019 and was referred to OLADIPO for treatment. OLADIPO met with Patient 4 once and for approximately three minutes. OLADIPO did not conduct a physical examination or inquire as to Patient 4's medical history.

35. OLADIPO billed Health Plan 5 for Patient 4's visit using CPT Code 99204. This claim was false because OLADIPO did not provide the treatment required to bill using this code.

### UC-1

36. In 2019, an undercover law enforcement agent ("UC-1") sought treatment from OLADIPO, complaining of a shoulder injury resulting from a car accident. UC-1 actively requested a prescription for oxycodone from OLADIPO, and OLADIPO provided it.

37. UC-1 returned to visit OLADIPO five more times.

38. OLADIPO did not perform a physical examination of UC-1 or obtain UC-1's medical history during any of UC-1's six office visits.

39. In six encounters with OLADIPO, UC-1 had 8, 4, 6, 5, 11, and 3 minutes, respectively, of face-to-face time with OLADIPO. In each instance, OLADIPO generated false treatment notes indicating that he provided more treatment than he actually provided.

40. OLADIPO billed the first of these visits to Health Plan 1 using CPT Code 99203 and the remaining visits using CPT Code 99213. These claims were false because OLADIPO did not provide the treatment required to bill using these codes.

## COUNTS ONE – ELEVEN
Health Care Fraud
(18 U.S.C. § 1347)

The Grand Jury charges:

41. The Grand Jury re-alleges and incorporates by reference paragraphs 1-40 of this Indictment.

42. From in or about January 2016 and continuing until in or about December 2019, in the District of Massachusetts and elsewhere, the defendant,

OLAREWAJU JAMES OLADIPO

knowingly executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of these health care benefit plans, by means of materially false and fraudulent pretenses, representations, and promises, by submitting, willfully causing the submission, and aiding and abetting in the submission of materially false and fraudulent claims for services; to wit, by submitting claims for E/M services that OLADIPO did not provide on or about the dates set forth below:

| Count | Approximate Date of Offense | Patient | Approximate Date of Service | CPT Code Billed | Amount Billed | Health Care Benefit Program |
|---|---|---|---|---|---|---|
| 1 | 2/20/2019 | UC-1 | 2/5/2019 | 99203 | $325.00 | Health Plan 1 |
| 2 | 2/20/2019 | UC-1 | 2/14/2019 | 99213 | $345.00 | Health Plan 1 |
| 3 | 4/18/2019 | UC-1 | 4/15/2019 | 99213 | $345.00 | Health Plan 1 |
| 4 | 3/21/2018 | Patient 1 | 3/20/2018 | 99213 | $345.00 | Health Plan 2 |
| 5 | 9/5/2018 | Patient 1 | 9/4/2018 | 99213 | $345.00 | Health Plan 2 |
| 6 | 9/15/2016 | Patient 2 | 9/14/2016 | 99214 | $375.00 | Health Plan 3 |
| 7 | 10/11/2016 | Patient 2 | 10/11/2016 | 99214 | $375.00 | Health Plan 3 |

| Count | Approximate Date of Offense | Patient | Approximate Date of Service | CPT Code Billed | Amount Billed | Health Care Benefit Program |
|---|---|---|---|---|---|---|
| 8 | 11/8/2016 | Patient 2 | 11/8/2016 | 99214 | $375.00 | Health Plan 3 |
| 9 | 10/19/2018 | Patient 2 | 10/18/2018 | 99214 | $425.00 | Health Plan 3 |
| 10 | 8/15/2018 | Patient 3 | 8/14/2018 | 99213 | $345.00 | Health Plan 4 |
| 11 | 8/13/2019 | Patient 4 | 8/13/2019 | 99204 | $475.00 | Health Plan 5 |

All in violation of Title 18, United States Code, Section 1347.

## FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(7))

The Grand Jury further finds:

43. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1347, set forth in Counts 1 through 11, the defendant,

## OLAREWAJU JAMES OLADIPO

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses.

44. If any of the property described in Paragraph 43, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(7), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 42 above.

14

All pursuant to Title 18, United States Code, Section 982(a)(7).

A TRUE BILL

_____
FOREPERSON

_____
EVAN D. PANICH
WILLIAM B. BRADY
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: March 21, 2022
Returned into the District Court by the Grand Jurors and filed.

　　　　　　　　　　　　　　　　　　　/s/ Thomas F. Quinn  Deputy Clerk 3/21/22 at 1:05pm
　　　　　　　　　　　　　　　　　　　DEPUTY CLERK