UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | |
| OLAREWAJU JAMES OLADIPO, | * | Criminal Action No. 22-cr-10062-ADB |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | * | |
| | * | |

## MEMORANDUM AND ORDER ON FORFEITURE AND RESTITUTION

BURROUGHS, D.J.

Following a jury trial, Defendant Dr. Olarewaju James Oladipo ("Dr. Oladipo") was found guilty on ten counts of an eleven-count Indictment that charged health care fraud in violation of 18 U.S.C. § 1347.  [ECF Nos. 1, 134].

I.   **BACKGROUND**

On May 16, 2024, prior to sentencing, the Government filed a motion for an order of forfeiture against Dr. Oladipo for $991,324.29 pursuant to 18 U.S.C.§ 982(a)(7)[1] and Rule 32.2(b) of the Federal Rules of Criminal Procedure.  [ECF No. 179].  Dr. Oladipo opposed the motion on May 20, 2024, [ECF No. 180], and the Government filed a reply on May 21, 2024, [ECF No. 184].  At sentencing, the Court deferred issuing the forfeiture order and after learning

---

[1] Section 982(a)(7) provides that "[t]he court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense."  18 U.S.C.A. § 982(a)(7).

that the Government would file a motion for restitution, [Sentencing Transcript ("Tr.") 9:10–14], also deferred ruling on restitution, [id. 9:15].  On May 29, 2024, the Government moved to include restitution in the judgment for a total amount of $487,074.53, which it subsequently reduced to $450,303.26, [ECF Nos. 186, 194], and filed an amended order of forfeiture seeking $487,074.53, [ECF No. 187].  Dr. Oladipo objected to both motions on June 28, 2024, [ECF No. 190], and the Government replied on July 11, 2024, [ECF No. 194].

## II.    DISCUSSION

### A.    Forfeiture Amount

Dr. Oladipo argues that the Court should deny the Government's motion on forfeiture of $487,074.53 because it is unreasonably excessive.  [ECF Nos. 180, 190].  Dr. Oladipo asserts that according to the plain language of 18 U.S.C. § 982(a)(7), the forfeiture amount is limited to the counts of conviction.  [ECF No. 180 at 1–2; ECF No. 190 at 5–6].  Therefore, because Dr. Oladipo was convicted of ten counts of health care fraud on particular dates, forfeiture is limited to the proceeds of these specific offenses, which "are the amounts of money that Dr. Oladipo received for the level of services that were not rendered on those dates."  [ECF No. 190 at 5]. Relying on this formulation, Dr. Oladipo calculates the proper forfeiture amount to be $350.70. [ECF No. 180 at 1–2; ECF No. 190 at 5–6].  Dr. Oladipo further argues that the Government's requested forfeiture violates his rights under the Eighth Amendment as an excessive fine and deprives him of his livelihood.  [ECF No. 180 at 2–3; ECF No. 190 at 5–7].  The Government responds that because Dr. Oladipo was charged with and found guilty of a scheme to defraud, the Court can consider "uncharged, dismissed, or acquitted conduct in determining [the] forfeiture amount."  [ECF No. 184 at 1 (quoting United States v. Cox, 851 F.3d 113, 128 (1st Cir. 2017)); ECF No. 194 at 7].  In relation to Dr. Oladipo's Eighth Amendment argument, the Government

contends that forfeiture equal to the proceeds of the offense is never excessive.  [ECF No. 184].
The Court agrees with the Government.

Dr. Oladipo was found guilty of ten specific instances of health care fraud which were
part of a scheme to defraud that ran "[f]rom in or about January 2016 through in or about
December 2019."  [ECF No. 1; id. ¶¶ 11, 42; ECF No. 134].  In circumstances involving a
scheme to defraud, the First Circuit has held that "funds 'obtained . . . as a result' of the offense
'consist of the funds involved in that fraudulent scheme, including additional executions of the
scheme that were not specifically charged or on which the defendant was acquitted.'"  United
States v. Cox, 851 F.3d 113, 128 (1st Cir. 2017) (quoting United States v. Lo, 839 F.3d 777, 793
(9th Cir. 2016)).  As such, the Court finds that Dr. Oladipo's loss calculation is too narrowly
focused on the individual counts and fails to account for the fact that his offense involved a
scheme to defraud.

Further, contrary to Dr. Oladipo's contention, "[f]orfeiture orders tied to the proceeds of a
crime generally are not considered a fine subject to the Eighth Amendment."  States v. Sanjar,
853 F.3d 190, 214 (5th Cir. 2017), cert. denied, 583 U.S. 893 (2017), opinion superseded on
other grounds, 876 F.3d 725 (5th Cir. 2017); see also United States v. Levesque, 546 F.3d 78, 85
(1st Cir. 2008) (observing "that a defendant's inability to satisfy a forfeiture at the time of
conviction, in and of itself, is not at all sufficient to render a forfeiture unconstitutional").
Accordingly, based on the evidence and testimony presented at trial and the Court's ruling at
sentencing, the Court enters a money judgment against Dr. Oladipo in the amount of
$487,074.53.

**B.    Restitution Amount**

The purpose of the Mandatory Victim Restitution Act ("MVRA") is to make the victim

whole.  See United States v. Naphaeng, 906 F.3d 173, 179 (1st Cir. 2018).  "In each order of

restitution, the court shall order restitution to each victim in the full amount of each victim's

losses as determined by the court and without consideration of the economic circumstances of

the defendant."  18 U.S.C. § 3664(f)(1)(A).  "Restitution must be ordered regardless of the

defendant's present ability to pay."  United States v. Lazar, 770 F. Supp. 2d 447, 450 (D. Mass.

2011) (citing United States v. Cheal, 389 F.3d 35, 53 (1st Cir. 2004) ("The court may take a

defendant's financial resources into account only insofar as they affect the manner in which, and

the schedule according to which, the restitution is to be paid. . . ." (internal quotation marks

omitted))).  As articulated by the First Circuit,

> For the purpose of calculating restitution, actual loss is the beacon by which
> federal courts must steer.  In this context, actual loss is limited to [the] pecuniary
> harm that would not have occurred but for the defendant's criminal activity.  This
> standard obligates the government to show both that the particular loss would not
> have occurred but for the conduct undergirding the offense of conviction and that
> a causal nexus exists between the loss and the conduct — a nexus that is neither
> too remote factually nor too remote temporally.
>
> Restitution is serious business, but hearings to quantify restitution amounts should
> not be allowed to spawn mini-trials.  As we previously have explained, we do not
> expect a sentencing court to undertake a full-blown trial in order to arrive at an
> appropriate restitution amount.  Nor do we hold a sentencing court to a standard
> of absolute precision when fashioning restitution orders.  In the end, we will
> uphold a sentencing court's restitution award [a]s long as the court's order
> reasonably responds to some reliable evidence.
>
> Although this standard is relatively modest in application, it has some teeth.  A
> sentencing court's [m]ere guesswork will not suffice.  Similarly, rough
> approximation[s] that do not sufficiently reflect[ ] . . . the losses of the victims are
> not appropriate grist for the restitution mill.  The court must resolve any genuine
> and material disputes about the fact, cause, or amount of the loss by a
> preponderance of the evidence.

United States v. Simon, 12 F.4th 1, 64–65 (1st Cir. 2021) (internal quotation marks and citations omitted).

The Government seeks $450,303.26 in restitution to the insurers.[2]  [ECF No. 186 at 1; ECF No. 194 at 2].  As a threshold matter, Oladipo objects to an order of restitution on the basis that the procedural requirements of the MVRA, which provide in relevant part that "the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, . . . information sufficient for the court to exercise its discretion in fashioning a restitution order," were not followed.  18 U.S.C. § 3664(a); [ECF No. 190 at 2–4].  Dr. Oladipo asserts that "[t]here is no indication in the [Presentence Report ("PSR")] that the government was seeking restitution, or in what amount" and that he only learned of the Government's motion at the sentencing hearing.  [ECF No. 190 at 4 (quoting PSR ¶¶ 98–99)].  The Government responds that restitution under the MVRA is mandatory and, as a result, even if the procedural requirements were not explicitly followed, victims are still entitled to restitution.  [ECF No. 194 at 2–3].  Further, although the PSR may not have stated a specific monetary figure, "it contained ample factual basis to determine that restitution was warranted and mandatory," such as the PSR's description of the loss calculation methodology, which noted the total loss of at least 100 insurance companies.  [ECF No. 194 at 3].

---

[2] The Government requested $487,074.53 in its motion to include restitution in the judgment, [ECF No. 186], but reduced that amount to exclude "self-pay" amounts and now seeks $450,303.26, [ECF No. 194 at 2 n.1].

Regardless of whether the PSR sufficiently indicated that the Government was seeking restitution,[3] the Court cannot ascertain any prejudice to Dr. Oladipo given that it deferred ruling on restitution at sentencing and allowed the parties to fully brief the issue before entering the present order.  United States v. Cardozo, 68 F.4th 725, 734 (1st Cir. 2023) (finding that although the government rather than the probation office supplied the district court with restitution accounting, the defendant failed to show prejudice, as he did not explain how the outcome would have differed if the probation office would have followed the literal requirements of § 3664(a)); see United States v. Cienfuegos, 462 F.3d 1160, 1163 (9th Cir. 2006) (finding that because the procedural requirements of § 3664 were designed to protect victims, the Second, Fourth, Sixth, and Seventh Circuit have held that failure to comply with its procedural requirements absent actual prejudice to the defendant is harmless).  Therefore—and Dr. Oladipo points to no authority to the contrary—the Court finds no reason not to issue an order of restitution at this juncture.  See United States v. Zagon, No. 2:11-cr-65, 2012 WL 1253057, at *2 (D. Me. Apr. 13, 2012) ("The Court acknowledges that unlike other elements of a sentence, there is some statutory authority allowing for the amount of restitution to be determined (or increased) after sentencing."); see also Cheal, 389 F.3d at 47–48 (affirming the trial court's restitution order entered more than four months after sentencing in part because there was no prejudice to defendant).

---

[3] That said, the Court is satisfied that the PSR put Dr. Oladipo on notice that the Government would seek restitution.  See, e.g., [PSR ¶¶ 24–28 (providing the Government's loss calculation based on payments from at least 100 insurance companies), 98–99 ("Pursuant to 18 U.S.C. § 3663A, restitution in an amount to be determined shall be ordered in this case.")].

Having settled this preliminary matter, the Court now turns to the restitution amount.  Dr. Oladipo argues that an accurate calculation of the actual loss for insurers "is the difference between the level of service [he] actually billed and the level of service [he] should have billed for each count of conviction," which he calculates to be $350.70.  [ECF No. 190 at 4]. Alternatively, Dr. Oladipo asserts that restitution should be at most $74,235.05, reflecting the total amount billed to insurers on each of the so-called impossible days[4] and "down-cod[ing] all [evaluation and management] visits by one level."  [Id. at 4–5].  In response, the Government maintains that because there was a scheme to defraud, the "MVRA applies to all victims directly and proximately harmed by the scheme" and "victims of uncharged conduct that is part of the scheme."  [ECF No. 194 at 5–6].

The Court finds that restitution in the amount of $450,303.26 to insurers is appropriate. This Circuit has held that where an offense "involves as an element a scheme," a district court "may order restitution without regard to whether the conduct that harmed the victim was conduct underlying the offense of conviction."  United States v. Acosta, 303 F.3d 78, 86–87 (1st Cir. 2002).  Given the nature of the scheme to defraud and the evidence adduced at trial, the Court finds that the Government more realistically approximates the victims' losses and notes that, if anything, the calculation is conservative rather than overreaching.  See, e.g., [ECF No. 145 ("Trial Tr. Day 7") at 126:24–127:2 (payor testifying that if she learned that elements of service codes were not met, she would deny claims); ECF No. 141 ("Trial Tr. Day 3") at 221:22–25 (if a provider upcodes a claim it is either denied or downcoded)]; see also [ECF No. 194-1 ¶ 4 (FBI

---

[4] These are dates where, based on the Government's expert, it would have been impossible for Dr. Oladipo to provide the level of service for which he billed given the volume of patients. [PSR ¶ 26].

Special Agent explaining that the loss calculation did not include every "evaluation and management" service that Dr. Oladipo billed during the relevant time period but instead only considers days when he billed services for sixty or more patients)].  Finally, because the Government has already halved the amount it initially proposed for its loss calculation, the Court is satisfied that the risk of over-inclusiveness has been sufficiently mitigated. [5]  In sum, the Court grants a restitution of $450,303.26 to insurers.

## III.    CONCLUSION

For the reasons set forth above, the Court issues an order for forfeiture of $487,074.53 and order for restitution in the amount of $450,303.26.

**SO ORDERED.**

December 23, 2024                                          */s/ Allison D. Burroughs*
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE

---

[5] The Court observes that Probation found that the Government's initial estimate of loss likely overstated the loss amount.  [PSR ¶ 42].